NOT FOR PUBLICATION                                                    (Docket No. 9)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                          :
LISA AURITE and JOSEPH AURITE,            :
                                          :
              Plaintiffs,                 :      Civil No. 08-2807 (RBK/KMW)
                                          :
       v.                                 :      **OPINION**
                                          :
JAMES W. MORRIS and JOHN DOE(S)           :
(1-5),                                    :
                                          :
              Defendants.                 :
_____          :

**KUGLER**, United States District Judge:

       This matter arises out of an automobile accident between Defendant James W. Morris and

Plaintiffs Lisa Aurite and Joseph Aurite, husband and wife.  Defendant has moved for summary

judgment against Plaintiff Lisa Aurite on two grounds.  First, he argues that she is not entitled to

noneconomic damages under The Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A.

§ 39:6A-8, because she has not suffered a permanent injury.  Second, he argues that since she has

not suffered a permanent injury, she also cannot seek economic damages for lost wages and lost

earning capacity.  For the following reasons, the Court grants the Motion in part and denies the

Motion in part.

1

**I.     BACKGROUND**[1]

On June 11, 2006, Lisa and Joseph Aurite were traveling northbound on the Garden State Parkway when their vehicle was rear-ended by a vehicle driven by James Morris.  Ms. Aurite was the passenger in the car and was injured, but she did not go to the emergency room at the time of the accident or anytime thereafter.  However, on June 23, 2006, Ms. Aurite went to see Dr. Stephen Ficchi with complaints of neck and mid-back pain.

Ms. Aurite had initially attempted to treat herself at home but sought help when her condition deteriorated.  Ms. Aurite saw Dr. Ficchi through November 2006, and his care included heat and electrical stimulation treatments.  Dr. Ficchi later wrote a report dated February 27, 2008, wherein he stated "Mrs. Aurite sustained serious, permanent injuries as a result of [the June 11th] accident and has subsequently been unable to return to her pre-injury profession as a fitness coordinator/instructor."  Pl. br., Ex. C.  He also wrote a "Discharge Report" dated May 14, 2008, wherein he diagnosed Ms. Aurite as having cervical spine strain and sprain with dysfunction, thoracic spine strain and sprain with dysfunction, bilateral shoulder strain and sprain with dysfunction, and myofascial pain syndrome.  Pl. br., Ex. E at 2.  He concluded that she had a permanent impairment of the spine.  Id.

In addition to Dr. Ficchi, Dr. Gary Goldstein, a licensed and board certified orthopedic surgeon, also examined Ms. Aurite.  He authored three reports and a certification of permanency. In a report dated January 16, 2007, the date of her first examination, Dr. Goldstein wrote that he

---

[1] Because the pending Motion is limited to Ms. Aurite's claims, the background facts are limited to those relevant to her allegations.

performed a number of tests[2] on Ms. Aurite from which he concluded she had "cervical facet syndrome, possible occult disc initiated by the 06/11/06 accident."  Pl. br., Ex. F at 4.  In the "Discussion" section, Dr. Goldstein noted that "[i]f anyone would heal, she would."  Id.

At no point in the January 16, 2007 report–or indeed any report thereafter–did Dr. Goldstein explain what "cervical facet syndrome, possible occult disc" is or how it is usually diagnosed, and what evidence led him to diagnose it in Ms. Aurite.

In a subsequent report, dated May 1, 2007, Dr. Goldstein noted that "[o]n examination, the patient is clearly doing better."  Pl. br., Ex. G.  He also reflected that he wanted to do an EMG of the neck and upper extremities as well as an MRI of the neck.  Id.  Importantly, Ms. Aurite has never had any objective diagnostic testing, including a MRI,[3] CT,[4] or an EMG.[5]  She also has not had any epidural injections.

Dr. Goldstein authored a third report, dated September 25, 2008, wherein he noted that "[o]n examination, there is tightness and stiffness in the neck and mantle with facet joint tenderness at about the level of C5.  Cervical compression has some positivity reproducing some of the radiation to the deltoid area.  Distraction test produces some improvement and subtle

---

[2] Romberg test; straight leg raising test; Lasegue tests; Faber's test; Adson's test; Reverse Phalen's test; Wright's traction maneuver; and Hoover's, Burn's Bench and Waddell's compression and torso rotation.  Pl. br., Ex. F at 2-3.  Dr. Greenberg also examined Ms. Aurite's relfexes, her motor strength, range of motion, and spinal felxion and extension.  He noted tenderness with palpitation in the cervical spine and mantel and noted facet joint tenderness and chronic tightness.  Id. at 3.

[3] Magnetic resonance imaging.  N.J. Amin. Code. § 11:3-4.5(b)(5) (2000).

[4] "CT" or "CAT Scan" means computer assisted tomographic studies.  § 11:3-4.5(b)(6).

[5] Needle electromyography.  § 11:3-4.5(b)(1).

worsening depending on extent." Pl. br., Ex. H at 1-2. Dr. Goldstein noted his impression as "[c]ervical disc syndrome most likely in the setting of some preexisting, but asymptomatic degenerative disease construct made permanently symptomatic as a result of the 6/11/06 accident." Id. at 2. In the "Discussion" section, Dr. Goldstein noted that Ms. Aurite's family doctor "has not pushed appropriate diagnostic testing." Id. He also noted, "[i]t is a shame this patient has ongoing realistically permanent impairment of the neck functionality as a result of the 6/11/06 accident." Id.

On October 4, 2008, Dr. Goldstein authored the "Physician's Certification of Permanency," as required by AICRA, wherein he stated that Ms. Aurite's injuries from the accident were "Cervical facet syndrome; Possible occult disc." Pl. br., Ex. I. He based his certification on "a) my objective clinical findings; and b) the clinical findings of consulting physicians." Id.

At the time of the accident, Ms. Aurite was working as a fitness director. Thus, in addition to the medical evidence, the record also contains a Vocational-Economic Loss Report from Dr. Robert Wolf, a certified rehabilitation economist. Dr. Wolf's report opines that as a result of the accident, Ms. Aurite will lose $170,551 in income over her working lifetime, since she can no longer work as a part-time fitness instructor.

On June 5, 2008, Lisa and Joseph Aurite brought a five count complaint against James Morris and John Doe(s) 1-5. Ms. Aurite alleged claims for negligence (Count One), respondeat superior (Count Three), and loss of consortium (Count Five). Defendant moved for summary judgment on July 15, 2009, with a motion day of August 17, 2009. Ms. Aurite filed an untimely response on August 18, 2009. See L. Civ. R. 7.1(d)(2) (stating brief in opposition due at least 14

4

days before motion day).  Nevertheless, the response is not so late as to warrant treating the

Motion as unopposed, cf. Rodriguez v. Hayman, No. 08-4239, 2009 WL 4122251, at *4 (D.N.J.

Nov. 23, 2009) (treating motion to dismiss as unopposed where plaintiff filed brief in opposition

79 days after Court-ordered deadline), and thus the Court will consider the arguments made in

both the moving papers and the brief in opposition.

## II.     STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make

credibility determinations or engage in any weighing of the evidence; instead, the non-moving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at

255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of

demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture

Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either

by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by

"'showing' – that is, pointing out to the district court – that there is an absence of evidence to

support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the

moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific

5

facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "If the opposing party does not

so respond, summary judgment should, if appropriate, be entered against that party." Id.

## III.    DISCUSSION

As the underlying dispute arises out of a motor vehicle accident in New Jersey where the

Plaintiffs have elected a limited right to sue under their auto insurance policy, all parties agree

that Ms. Aurite's claims are subject to the Limitation on Lawsuit, or "verbal threshold," in

AICRA.  See Def. Rule 56.1 stmt. at ¶ 5, Pl. Rule 56.1 stmt. at ¶ 5.  Defendant makes two

arguments in support of the Motion for Summary Judgment: 1) Ms. Aurite cannot seek

noneconomic losses because she has no evidence of a permanent injury, and 2) Ms. Aurite cannot

seek economic losses for lost wages since that claim is dependent on her inadequately proved

permanent injury.  The Court turns to each of these arguments.

### A.    Noneconomic Loss

Under AICRA, a party subject to the limitation on lawsuit option is prohibited from suing

for noneconomic damages[6] unless the party sustained an injury resulting in 1) death, 2)

dismemberment, 3) significant disfigurement or significant scarring, 4) displaced fractures, 5)

loss of a fetus, or 6) a permanent injury "within a reasonable degree of medical probability."  N.J.

Stat. Ann. § 39:6A-8(a).  The purpose of the limitation is to prevent suits based on injures that

are not serious or permanent.  Libby v. Conner, No. 06-2903, 2007 WL 3232585, at *4 (D.N.J.

Oct. 31, 2007) (citing N.J. Stat. Ann. § 39:6A-1.1(b); Serrano v. Serrano, 183 N.J. 508, 516

(2005)).

As is relevant to the case before the Court, an injury is permanent when "the body part or

_____

[6] Defined as "pain, suffering and inconvenience."  N.J. Stat. Ann. § 39:6A-2(i).

organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." § 39:6A-8(a). To satisfy the injury requirement, a plaintiff must provide the defendant with a certification from a physician stating that the plaintiff has sustained a listed injury. Id.; Davidson v. Slater, 914 A.2d 282, 291 (N.J. 2007). The certification must be "based on and refer to objective clinical evidence, which may include medical testing . . . ." § 39:6A-8(a). The objective clinical evidence must be derived from accepted diagnostic tests and cannot be "'dependent entirely upon subjective patient response.'" Davidson, 914 A.2d at 291 (quoting § 39:6A-8(a)). Accepted diagnostic tests are listed in the New Jersey Administrative Code. See N.J. Stat. Ann. § 39:6A-4.7; N.J. Admin. Code § 11:3-4.5. If a certification does not rely on objective medical evidence, a reviewing court may grant summary judgment for the defendant. Libby, 2007 WL 3232585, at *5.

Defendant argues that Ms. Aurite cannot seek noneconomic damages[7] because the record is "totally devoid of objective medical evidence." Def. br. at 12. Specifically, Defendant argues that none of the testing by Dr. Goldstein or Dr. Ficchi to which Ms. Aurite was subjected appears on the list of accepted diagnostic procedures. Id. at 12, 16. Plaintiff counters that while none of the testing performed by Dr. Goldstein appears on the list, the list is not exhaustive and Dr. Goldstein "based his findings from a lifetime of hands-on medical learning." Pl. br. at 5. Curiously, Ms. Aurite does not argue that any of the testing by Dr. Ficchi shows objective clinical evidence of a permanent injury.

Examining the record as a whole, including the reports from both Dr. Ficchi and Dr.

_____

[7] Ms. Aurite's claims for noneconomic damages appear in paragraphs 12 and 22 of the Complaint.

7

Goldstein and the Physician's Certification of Permanency, the Court finds that no genuine issue of material fact exists for trial as to noneconomic loss.  Under AICRA, the physician certification must be based on objective clinical evidence.  § 39:6A-8(a).  Here, Ms. Aurite's certification contains a mere rote statement that the injury of "cervical facet syndrome, possible occult disk"[8] is based on "my objective findings; and b) the clinical findings of consulting physicians."  Pl. br., Ex. I.  However, a certification cannot merely parrot the statute.  See Oswin v. Shaw, 609 A.2d 415, 430 (N.J. 1992), superseded by statute on other grounds, N.J. Stat. Ann. § 39:6A-8.  Conclusory language is insufficient to meet a party's burden at summary judgment.  Id.  Moreover, the mere fact that Ms. Aurite supplied the certification is insufficient.  See Libby, 2007 WL 3232585, at *5 (holding court not bound by certification, it is mere evidence to be considered at summary judgment).

Even looking beyond the certification itself, Ms. Aurite still has not met her burden for three reasons.  First, at no point do any of Ms. Aurite's doctors, or indeed Ms. Aurite herself in the supporting brief, explain what "cervical facet syndrome, possible occult disk" is, how it is diagnosed, and exactly what objective clinical evidence is shown in the record to support such a diagnosis.  Alone, the failure to explain the purported permanent injury and failure to show how it is supported is grounds for granting summary judgment.  See Palucha v. Len, No. A-5747-06T2, 2008 WL 2245603, at *4 (N.J. Super. Ct. App. Div. June 3, 2008) (affirming summary

---

[8] In the Complaint, Ms. Aurite claims she suffered "cervical facet syndrome, chronic cervical sprain/strain with radiculopathy."  Compl. at 10.  However, Dr. Goldstein's certification of permanency is limited to cervical facet syndrome; possible occult disc.  Pl. br., Ex. I.  Since Ms. Aurite did not meet her statutory notification duty as to any other claimed injury, § 39:6A-8 (party must provide defendant with certification listing claimed injury), the Court will limit its inquiry to only cervical facet syndrome; possible occult disc.

judgment where report did not explain what "shoulder rotator cuff tendonitis" is or why it is a permanent injury, and where "medical jargon" did not explain how "signs" were evidence of a permanent injury), certif. denied, 960 A.2d 391 (N.J. 2008); see also Oswin, 609 A.2d at 430 (affirming summary judgment where report "rife with unexplained technological terms").

Second, the reports do not contain any objective clinical evidence to support finding a permanent injury. As pointed out by the Defendant, none of the testing performed by Ms. Aurite's doctors is approved. Compare Pl. br., Exs. B, E, F, G, H, with N.J. Admin. Code § 11:3-4.5. Such lack of approved testing is problematic for Ms. Aurite's claim. See Davidson, 914 A.2d at 296 (denying recovery for injuries in medical reports that were not diagnosed by approved testing). The Court's own review of the records shows, at most, Ms. Aurite exhibited some evidence of "muscle spasm," Pl. br., Ex. B at 2, Ex. E at 2, which is objective evidence of a permanent injury. See Oswin, 609 A.2d at 430; Jacques v. Kinsey, 788 A.2d 932, 938 (N.J. Super. Ct. Law Div. 2001) (citing cases regarding muscle spasm and verbal threshold). However, none of the doctors opined how muscle spasms support, if they indeed do, a diagnosis of cervical facet syndrome, possible occult disk. Such a showing is necessary to overcome summary judgment. See Palucha, 2008 WL 2245603, at *4. Additionally, the balance of any potential objective evidence (e.g., "tightness," "stiffness," "tenderness," Pl. br., Ex. H. at 1) appears based on Ms. Aurite's subjective responses and cannot be considered. See § 39:6A-8(a) (testing may not depend on patient's subjective response).

Third, summary judgment is appropriate because none of Ms. Aurite's reports, even if they do contain objective clinical evidence, link recognized clinical evidence to the permanency of her injury. At best, Dr. Ficchi links the permanence of Ms. Aurite's spine injury to "muscle

9

weakness," Pl. br., Ex. E at 2; however, the report does not show what accepted testing led to a conclusion of weakness, or how weakness supports the claimed injury of "cervical facet syndrome; possible occult disc."  To be sufficient to create a genuine issue of material fact for trial, the medical reports had to link objective evidence to a finding of a permanence.  See Oswin, 609 A.2d at 430.  While Dr. Goldstein and Dr. Ficchi no doubt believe that Ms. Aurite has a permanent injury,[9] their conclusions–without being linked to statutorily sufficient objective evidence–do not show that a genuine issue of material fact exists for trial.

Therefore, the Court grants Defendant's Motion for Summary Judgment as to Ms. Aurite's claims for noneconomic loss.

**B.      Economic Loss**

Defendant's second argument for summary judgment is that Ms. Aurite's claims for economic loss for loss of earnings and earning capacity fail because she has not presented sufficient evidence of a permanent injury.  Def. br. at 16.  The Court agrees in part and disagrees in part.

Under AICRA, it is a well-settled principle that a party can sue for economic losses even where that party's noneconomic loss claim fails; that is, where the party fails to satisfy the verbal threshold.  See, e.g., Miskelly v. Lorence, 883 A.2d 424, 426 (N.J. Super. Ct. App. Div. 2005). Economic loss is defined as "uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses."  § 39:6A-2(k).  Economic loss

---

[9] Notably, Dr. Goldstein remarks after his final examination that Ms. Aurite's condition is "realisitically permanent," Pl. br., Ex. H at 2, as opposed to *definitely* permanent.  The Court harbors doubt as to whether this statement, and its surrounding context, is sufficient to show Ms. Aurite's condition "will not heal to function normally with further medical treatment."  § 39:6A-8(a).

includes lost income, including income lost because the plaintiff was denied a career choice because of the injury.  See Martin v. Chhabra, 864 A.2d 1155, 1159 (N.J. Super. Ct. App. Div. 2005) (citing Loftus-Smith v. Henry, 669 A.2d 852, 858 (N.J. Super. Ct. App. Div. 1996)), superseded by statute on other grounds, N.J. Stat. Ann. § 39:6A-8.

With lost income, two classes of claims arise: one permitted, one not.  The first class is where the plaintiff claims lost wages on the basis of a statutory permanent injury.  With those claims, the plaintiff must first satisfy the verbal threshold.  See Miskelly, 883 A.2d at 578 ("Future economic loss must depend upon an injury which affects plaintiff's ability to earn income in the future.  Hence, where the claim is based on a permanent injury within the meaning of N.J.S.A. § 39:6A-8a, there must be a 'permanent injury' to sustain recovery beyond wages lost during a reasonable period of recuperation and recovery.").  The second class is where the plaintiff claims lost wages based on an injury from the accident–but not a "permanent" injury–and the claim only seeks lost earnings for an "appropriate" period of time.  See id. at 579 n.3; Matthews v. New Jersey Mfrs. Ins. Co., No. A-2050-06T3, 2007 WL 4552101, at *6-7 (N.J. Super. Ct. App. Div. Dec. 28, 2007) (affirming trial court's decision to bar jury charge on economic loss where plaintiff's claim involved "no segregated, set[-]aside number of days or weeks where there is a specific, temporary loss of work")

Under these standards, Ms. Aurite's claims for economic damages survive in part and fail in part.  Ms. Aurite's claim for "loss of earnings and earnings capacity," Compl. at ¶ 11, is based on the report of Dr. Robert P. Wolf.  See Def. br., Ex. K.  Dr. Wolf's analysis notes that before the accident, Ms. Aurite worked part-time as a fitness instructor.  Id. at 2.  His report goes on to note that because of the injury Ms. Aurite sustained, she will never be able to perform that work

11

again, which will ultimately result in a $170,551 loss of income between now and age 67.  Id. at 4, 8.

Based on these calculations, it is clear that Dr. Wolf assumed that Ms. Aurite's injury was permanent.  Had he assumed otherwise, the calculation would not have been up to age 67.  To the extent that Ms. Aurite claims a lifetime injury, those claims are clearly barred since she has not satisfied the verbal threshold.  See Miskelly, 883 A.2d at 579.  Her expert's calculation assumes a statutory permanent injury and she has not made a showing of such injury.  Thus, her claims for a lifetime of lost earnings must fail.

However, Defendant has not met his burden at summary judgment of showing that no genuine issue of material fact exists as to whether Ms. Aurite can state a claim for temporary lost future earnings.  While undoubtedly Dr. Wolf's report ultimately calculates Ms. Aurite's lost earnings over a lifetime, it also readily identifies how much she was making at the time of the accident and seemingly identifies an "appropriate" period through which she could have otherwise worked: mid-2011.  Def. br., Ex. K at 4.  Defendant has not shown that there is an absence of material fact as to a temporary loss of income after the accident.  See Pl. br. at 7 ("At the very least, the issue of this past wage claim should survive this motion.").  Should Ms. Aurite not be able to produce evidence at trial of a temporary, appropriate period of loss, then perhaps her economic claim will not go to the jury.  See Matthews, 2007 WL 4552101, at *7.  But at this stage of the litigation, Ms. Aurite's claim for temporary lost income survives.

Therefore, the Court grants Defendant's Motion as to economic damages based on a permanent injury, but denies the Motion as to economic damages based on a temporary loss of income.

### C.     Respondeat Superior and Loss of Consortium

Finally, neither Defendant nor Ms. Aurite briefed the sufficiency of Ms. Aurite's claims for respondeat superior liability (Count Three) and loss of consortium (Count Five). Nevertheless, Defendant's proposed order attached to the Motion for Summary Judgment suggests that the Court should dismiss Lisa Aurite's entire Complaint.  The Court finds that dismissal of these claims is unwarranted at this time since neither party addressed these claims and it is not abundantly clear that Defendant truly moves for dismissal.  Therefore the Court reserves judgment as to Counts Three and Five.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Ms. Aurite's claims for noneconomic loss.  The Court further **GRANTS** Defendant's Motion as to economic damages based on a permanent injury, and **DENIES** the Motion as to economic damages based on a temporary loss of income.

Date: 1-15-2010           ___/s/ Robert B. Kugler_____
                          ROBERT B. KUGLER
                          United States District Judge

13